```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FLOR GRIJALBA,                                              :
                                                            :    Civil Docket No.
                            Plaintiff,                      :
                                                            :    COMPLAINT
         - against -                                        :
                                                            :
METRO RITE LAUNDROMAT, INC. and                             :
HOWARD JI CHEN,                                             :
                                                            :
                            Defendants.                     :
                                                            :
-----------------------------------------------------------X
```

## NATURE OF THE ACTION

1.      Plaintiff, Flor Grijalba ("Ms. Grijalba" or "Plaintiff""), brings this action to recover unpaid wages, pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. Section 201, *et seq.*, the New York Labor Law ("NYLL"), Article 6 Section 190, *et seq.*, and Article 19 Section 650, *et seq.*, and the New York Codes, Rules and Regulations ("NYCRR") Section 142-1.1 *et seq.*, for work she performed for Metro Rite Laundromat, Inc., doing business as Bright White Laundry, and its owner and manager, Howard Ji Chen ("Mr. Chen"), (collectively "the Defendants").

2.      Ms. Grijalba seeks unpaid wages, liquidated and statutory damages, pre- and post-judgment interest, as well as costs and reasonable attorney's fees, pursuant to the FLSA and NYLL and applicable regulations.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

4. This Court has supplemental jurisdiction over the NYLL claims set forth herein pursuant to 28 U.S.C. § 1367 because these claims closely relate to the federal claims under the FLSA, having arisen from a common nucleus of operative facts, such that they form part of the same case or controversy.

5. The Eastern District of New York is the proper venue pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, both Defendants reside in this judicial district within the State of New York.

## PARTIES

6. Plaintiff Flor Grijalba is a resident of Kings County, New York.

7. Upon information and belief, Defendant Metro Rite Laundromat, Inc. ("Metro Rite") is a domestic corporation organized under the laws of the State of New York with its principal place of business at 8923 5th Avenue, Brooklyn, New York 11209. Metro Rite operates a laundromat at that location, under the name Bright White Laundry (the "Laundromat").

8. Metro Rite is an enterprise engaged in interstate commerce within the meaning of the FLSA.

9. Upon information and belief, Metro Rite earned revenues of between $1,500 and $2,000 on an average day, consisting of approximately $1,000 of revenue

from customers paying for use of self-service laundry machines, and between $500 and $1,000 of "wash & fold" laundry service.

10. The Laundromat was open seven days per week, 24 hours per day during all relevant times.

11. Upon information and belief, Metro Rite has gross revenues of $500,000 or more annually.

12. Metro Rite's employees, at all relevant times, handled goods and materials that had been moved or produced for commerce. For example, Defendants purchase, use and sell Tide brand detergents, made by international conglomerate Proctor & Gamble, a company with its headquarters in Cincinnati, Ohio. Additionally, Defendants use electronic payment machines rented from Equipment Systems and Devices, a company with its headquarters in Pennsylvania, and uses washing machines, and dryers marketed and made outside of New York State.

13. Upon information and belief, Mr. Chen is a resident of Richmond County, New York.

14. At all relevant times, Mr. Chen was the principal owner and general manager of Metro Rite.

15. At all relevant times, Mr. Chen managed the day-to-day operations of Metro Rite and had power over personnel and pay decisions including the power to hire and fire, establish and pay employees' wages, establish employees' work schedules and maintain employment records.

16. At all relevant times, Defendants were each individually Ms. Grijalba's "employers" under the FLSA and NYLL.

17. Ms. Grijalba worked for the Defendants from approximately May 2012 until March 13, 2019.

## FACTS

18. Mr. Chen was the general manager and principal owner of Metro Rite at all relevant times.

19. Mr. Chen hired Ms. Grijalba in or around May 2012 to work in the Laundromat.

20. When Ms. Grijalba was hired, Mr. Chen informed her that he would pay her $8 per hour.

21. Ms. Grijalba performed a variety of tasks at work, including but not limited to washing and drying laundry, fulfilling customer orders, collecting money from customers and issuing receipts, opening and closing the Laundromat, cleaning the facilities, and training new staff.

22. Mr. Chen set Ms. Grijalba's work schedule, which was typically six days a week, Monday through Saturday, but also included Sundays when extra help was needed.

23. Ms. Grijalba started work at approximately 8 a.m. every day, and stayed until she had completed all her assigned work—anywhere from 3 p.m. to 3 a.m. Mr. Chen did not provide her with a fixed clock out time.

24. Though Ms. Grijalba's work schedule varied week to week, she generally worked between 54 hours (six days from 8 a.m. until 5 p.m.) and 87 hours per week (six

4

days from 8 a.m. until 10:30 p.m.). Accordingly, she averaged 67 hours of work per week from July 2014 until March 2019.

25. Ms. Grijalba frequently worked shifts of more than ten hours while employed by the Defendants. For example, Ms. Grijalba's records show that in one week, from Monday to Sunday, she worked daily shifts of 15, 14, 16, 4, 17, 13, and 3 hours. In another week, she worked daily shifts, from Monday to Sunday, of 12.5, 13, 16, 13, 16, 13, and 5 hours.

26. Mr. Chen paid Ms. Grijalba in cash, which he handed to her in an envelope listing the number of hours for which she was being paid.

27. At all times during Ms. Grijalba's employment, the Defendants paid her only her hourly rate of pay for every hour she worked. She was not paid an overtime premium of one-and-a-half times her rate of pay for hours worked over forty in a week.

28. In or around January 2017, Mr. Chen raised Ms. Grijalba's pay from $8 per hour to $8.50 per hour. The applicable New York State minimum wage at that time was $10.50 per hour. Ms. Grijalba's schedule remained the same.

29. In or around January 2019, Mr. Chen raised Ms. Grijalba's pay from $8.50 to $9 per hour. The applicable New York State minimum wage at that time was $13.50 per hour. Ms. Grijalba's schedule remained the same.

30. In the weeks referred to in paragraph 25 25above, the Defendants paid Ms. Grijalba a total of $738 dollars and $796.50 respectively. The rate of pay was, therefore, $9 per hour with no pay at one-and-a-half times the minimum wage rate for hours above forty in each week, and no spread of hours for shifts that were longer than ten hours.

5

31. During Ms. Grijalba's employment with the Defendants between May 2012 and March 13, 2019, Defendants failed to provide her with any notice with information as required by NYLL § 195(1), including information regarding rate of pay and the basis thereof.

32. During Ms. Grijalba's employment with the Defendants between May 2012 and March 13, 2019, Defendants failed to provide her with any notice with information as required by NYLL § 195(3), including information regarding the name of the employer, its address, or its phone number.

33. Mr. Chen was present at the Laundromat every day, from 12 p.m. until 1:30 p.m., as well as on Friday evenings. He also worked at the Laundromat whenever there was additional work necessary. While at the Laundromat, he managed Ms. Grijalba's day-to-day tasks. For example, he oversaw Ms. Grijalba's work, made sure she and others had all the materials they needed to perform their jobs. Mr. Chen also paid Ms. Grijalba's wages, albeit inconsistently: sometimes he paid her weekly, and sometimes every two weeks.

34. In addition, Ms. Grijalba was required to ask Mr. Chen for permission to take vacation.

35. Ms. Grijalba took approximately two weeks of vacation per year to visit her daughter and therefore worked fifty weeks per year. She was not paid for those two weeks of vacation.

36. The Defendants had a policy and practice of reducing Ms. Grijalba and other employees' wages to compensate for damaged laundry and reimbursements that the Laundromat gave to customers.

37. Ms. Grijalba recalls several specific occasions when Defendants made such deductions. For example, on one occasion, Defendants unlawfully deducted $529 from Ms. Grijalba's wages; on additional occasions they unlawfully deducted amounts of $70, $135, $250, and $50 from Ms. Grijalba's wages.

38. None of the deductions above were made for statutorily authorized reasons but were made instead to recover costs the company owed to clients for damaged or lost clothing.

39. Ms. Grijalba complained to Mr. Chen on multiple occasions throughout her employment that she was not receiving the overtime pay due to her and that she was not paid the minimum wage.

40. Mr. Chen repeatedly deflected her complaints by ignoring her or providing excuses related to the performance of the business. For example, he would say that he "didn't have the money" or that he would pay her wages and overtime "later."

41. On or around June 2016, Ms. Grijalba had an accident, which consisted of falling onto a sink in the Laundromat and injuring her arm, hand, and face.

42. Afterwards, she went to the emergency room, promptly notified Mr. Chen that she would need a week off to recover and sent him a physician's note in support.

43. On or about the date of her injury, Ms. Grijalba requested paid time off as a result of her injury. Mr. Chen refused to pay her for any time in which she was not working due to the injury.

44. Ms. Grijalba returned to work after her two-day leave of absence because she could not afford to take unpaid sick time.

## FIRST CAUSE OF ACTION
### (Unpaid Overtime Wages under the FLSA, 29 U.S.C. § 207)

45. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

46. Ms. Grijalba received an hourly wage of only $8, later $8.50 and then $9 for every hour she worked, regardless of how many hours she worked in a work week.

47. Despite Ms. Grijalba having worked more than forty hours per week in almost every week she was employed by the Defendants, she was never paid at a rate of one-and-half the minimum wage for hours worked in excess of forty hours in a week as required by 29 U.S.C. § 207 at any time during her approximately nine years of employment at Metro Rite.

48. Defendants knowingly and willingly violated Plaintiff's rights by failing to pay her overtime wages, in accordance with 29 U.S.C. § 207.

49. Ms. Grijalba therefore seeks unpaid overtime wages earned between July 2014, and March 13, 2019.

50. Ms. Grijalba seeks liquidated damages equal to the amount of unpaid overtime, along with reasonable costs and attorney's fees, pursuant to 29 U.S.C. § 216.

## SECOND CAUSE OF ACTION
### (Unpaid Overtime Wages under NYLL § 652 and 12 NYCRR § 142-2.2)

51. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

52. Ms. Grijalba received an hourly wage of only $8, later $8.50 and then $9, per hour that she worked regardless of how many hours she worked in a workweek.

53. Ms. Grijalba regularly worked between 55 and 88 hours per week while employed by the Defendants between July 2014 and March 2019.

54. Ms. Grijalba was never paid at a rate of one-and-half the minimum wage for hours worked in excess of forty hours in a week as required by 12 NYCRR § 142-2.2 at any time during her approximately nine years of employment at Metro Rite Laundromat.

55. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay her overtime in accordance with NYLL § 652 and 12 NYCRR § 142-2.2.

56. Ms. Grijalba seeks unpaid overtime wages earned between July 2014, and March 13, 2019.

57. Ms. Grijalba seeks liquidated damages equal to the amount of unpaid overtime, along with reasonable costs and attorney's fees, pursuant to NYLL § 663.

## THIRD CAUSE OF ACTION
### (Unpaid Minimum Wages under NYLL § 652(1) and NYCRR § 142-2.1)

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

59. From the period between January 2015 and March 13, 2019, the Defendants knowingly and willingly paid Ms. Grijalba at a rate that was less than the minimum wage set out in NYLL § 652 and the NYCRR § 142-2.2.

60. Ms. Grijalba seeks unpaid wages, liquidated damages equal to the amount of wages owed to her, along with reasonable costs and attorney's fees, pursuant to NYLL § 198, § 652, and § 663.

## FOURTH CAUSE OF ACTION
### (Unpaid Spread of Hours Pay under NYLL § 652 and NYCRR 142-2.4)

61. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

62. Ms. Grijalba was not paid an additional hour of pay at the minimum wage for each shift where she worked over ten hours, in violation of NYLL § 652 and 12 NYCRR 142-2.4.

63. Ms. Grijalba seeks unpaid spread of hours pay, as well as an equal amount in liquidated damages, along with reasonable costs and attorney's fees, pursuant to NYLL §§ 652 and 663, and NYCRR 142-2.4.

## FIFTH CAUSE OF ACTION
### (Failure to Provide Wage Statements pursuant to NYLL § 195(3))

64. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

65. Defendants failed to provide Ms. Grijalba with notices with every payment of wages, listing dates of work covered by that payment, rate of pay, deductions,

10

and other information concerning her wages, at any point during her employment with the Defendants between July 2014 and March 13, 2019.

66. Ms. Grijalba seeks the statutorily allowed penalty for failure to provide the notices referred to above in the amount of $5,000 plus reasonable attorney's fees pursuant to NYLL §§ 195(3) and 198.1-b.

## SIXTH CAUSE OF ACTION
### (Unlawful Deductions pursuant to NYLL § 193)

67. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

68. Defendants knowingly and willfully violated Ms. Grijalba's rights by taking unlawful deductions from her pay, in violation of NYLL § 193.

69. Ms. Grijalba seeks to recover the amount Defendants unlawfully deducted from her wages, as well as an equal amount in liquidated damages pursuant to NYLL § 663.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare Defendants' acts, practices, and omissions complained of herein to be in violation of Plaintiff's rights under FLSA and NYLL and applicable regulations;

2. Direct Defendants to pay Plaintiff unpaid wages under FLSA and NYLL;

3. Direct Defendants to pay Plaintiff liquidated damages under the FLSA and NYLL;

4. Direct Defendants to pay Plaintiff statutory damages under the NYLL;

11

5. Award Plaintiff reasonable attorney's fees, costs, pre- and post-judgment interest, as provided by law; and

6. Award such other legal and further relief that this Court deems necessary, just and proper.

Dated: July 28, 2020
New York, New York

YOURS,

**BETH E. GOLDMAN, ESQ.**
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, NY 10004
Tel: (212) 613-5000

_____/Elissa S. Devins/_____
Elissa Devins
Eric Arbizo, of Counsel
*Attorneys for Plaintiffs*