September 17, 2021

<u>VIA ECF</u>

Magistrate Judge Lois Bloom
United States District Court Judge
Easter District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Grijalba v. Metro Rite Laundromat Inc.,* Civil Action No. 1:20-cv-03398

Dear Judge Bloom,

The New York Legal Assistance Group represents Plaintiff, Flor Grijalba in the instant action. We, together with Counsel for Metro Rite Laundromat Inc., ("Metro Rite") and Howard Ji Chen (collectively, "Defendants") write jointly to request approval of the Settlement Agreement between and among Ms. Grijalba, Metro Rite and Mr. Chen (together, the "Parties"). The settlement agreement, signed by the parties and attached below as Exhibit 1 (the "Settlement Agreement"), resolves Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), New York Labor Law ("NYLL") Articles 6 and 19, § 190 *et. seq*., and § 652 and applicable regulations, 12 NYCRR § 142 *et. seq*. For the reasons that follow, the parties respectfully request approval of the attached Settlement Agreement on the basis that it represents a fair and reasonable compromise of a *bona fide* dispute.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   **Litigation Background**

A.   **Claims and Defenses**

This is an action under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and applicable regulations, by an employee of the Defendants. Flor Grijalba, the Plaintiff, worked for Defendants for approximately seven years as a cleaner and a manager at a laundromat operated by the Defendants. The Plaintiff alleges, under FLSA, that she worked 67.5 hours per week and was never paid time-and-half for hours worked above 40 in a week. She was also paid an hourly rate below the established minimum wage under the NYLL (*Id*. ¶¶27–30), and that Defendants failed to provide her with legally required hiring notices and wage statements (*Id*. ¶31 and 32).

Ms. Grijalba worked at 8923 5th Avenue, Brooklyn, Kings County, New York 11209, in a laundromat operated by Defendants as a cleaner and later as a manager (*Id*. ¶ 7). Ms. Grijalba did not have a set end time in her daily schedule, but regularly worked from 8 a.m. until her work was done. Typically, she finished her workday between 3 p.m. and 3 a.m., and worked six (6) or seven (7) days per week (*Id*. ¶¶22–23). She would normally work between fifty-four (54) and eighty-seven (87) hours per week (*Id*. ¶ 24), and averaged 67.5 hours per week.

Despite working in excess of forty (40) hours per week on a regular basis, Ms. Grijalba was only paid her hourly rate throughout her employment. (*See id.* ¶ 27). Ms. Grijalba was paid $8 per hour until approximately January 2017, when her salary was increased to $8.50 per hour. The New York State minimum wage at that time was $10.50 per hour (*Id* ¶ 28). Ms. Grijalba's salary was then increased to $9 per hour in or around January 2019, when the New York State minimum wage was $13.50 per hour (*Id* ¶ 29).

Pursuant to FLSA, Ms. Grijalba was underpaid a total of $13,030 in overtime wages from 2017 until 2019. Because the Parties submit this letter seeking the Court's approval of the proposed settlement of Ms. Grijalba's FLSA claims, they do not set forth a detailed basis for her NYLL claims here.

Defendants maintain that Ms. Grijalba was not an employee but a contractor, and as a result FLSA does not apply.

Each party wishes to avoid the considerable uncertainty and risk of litigation, as well as the expense and length of continued proceedings necessary to prosecute and defend this matter.

II.     **Settlement Negotiations**

A.              **Pre-filing Settlement Negotiations and Mediation**

Before bringing her case in the United States District Court for the Eastern District of New York, Plaintiff attempted to settle her claims against Defendants. On February 10, 2020, Plaintiff sent a detailed demand letter to the Defendants. Defendants, represented by counsel, and Plaintiff's counsel Eric Arbizo and Elissa Devins had several phone conversations attempting to settle Plaintiff's claims but were unable to reach a settlement. Afterwards, Plaintiff's counsel filed this action.

On April 14, 2020, this Court referred the matter to mediation as part of the EDNY's court-annexed mediation. On June 16, 2021, the parties attended a full-day mediation. Through the assistance of the mediator, Plaintiff and Defendants set out their positions and moved toward settlement but did not reach agreeable terms during the Mediation. The mediation was cut short because of Plaintiff's budgetary constraints; however the mediator's proposals were seriously considered by both sides throughout and following the mediation. Thereafter, discussions continued and the following day the Parties

reached an agreement in principle. Negotiations, especially regarding the timing of the payments, continued for a time following the initial agreement in principle because the Defendants face cash flow issues that need to be considered. Plaintiff's and Defendants' respective counsels drafted and signed the Settlement Agreement on September 17, 2021. A copy of the executed Settlement Agreement is annexed as Exhibit 1.

**B.      Settlement Agreement**

**Payment**

The Settlement Agreement provides that Defendants will pay an aggregate amount of $40,000 to Ms. Grijalba. The settlement amount is greater than the full amount of her unpaid wage claim under FLSA. *See* Settlement Agreement, ¶ 1(d). The agreement provides that the Defendants shall send Ms. Grijalba an initial payment of $20,000 ) by October 31st, 2021, or within 10 days of judicial approval of the Settlement Agreement, whichever is later. The remaining sum will be distributed in monthly payments of $1,000 per month for twenty (20) months starting in the month following the month in which the initial payment is made.

**Confession of Judgment**

To guard against the risk of Defendants' default over the course of the twelve-month payout period, Defendants have agreed to execute Confessions of Judgment for the amount of any unpaid balance remaining at the time of Defendants' default, following 15 days' notice and opportunity to cure. See Settlement Agreement at ¶2(b). The Plaintiff's attorneys will hold the Confession of Judgment until the settlement amount of $40,000 is paid in full.

**Release**

The Settlement Agreement releases the parties of claims against each other related to the payment of wages, specifically under FLSA and the NYLL. It does not provide a general release of all claims unrelated to the charges in this case. Further, there is no confidentiality provision in the Settlement Agreement.

## **LEGAL ANALYSIS**

The Parties seek the Court's approval of this negotiated settlement as fair and reasonable, as required by the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 200 (2d Cir. 2015). Generally, a FLSA settlement should be approved if the proposed agreement "reflects a reasonable compromise over contested issues." *Kochilas v. Nat'l Merchant Servs., Inc.*, No. 14 Civ. 311, 2015 WL 5821631, at *7

(E.D.N.Y. Oct. 2, 2015) (citation omitted).The Proposed Settlement is Fair and Reasonable to all Parties.

The sufficiency of a FLSA settlement depends on the totality of circumstances, including but not limited to the following factors cited in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

See also *Perez-Ramos v. St. George Holding Corp.*, No. 18 Civ 1929, 2020 WL 415818, at *2 (E.D.N.Y. Jan. 27, 2020) ("District courts in this circuit frequently look to the factors outlined in *Wolinsky* . . . to determine the reasonableness of a proposed settlement.").

**A.     Settlement Amount**

Plaintiff's counsel estimates Ms. Grijalba's maximum recovery under the FLSA to be approximately $26,061, plus pre-judgment interest, attorneys' fees and costs. A breakdown of Plaintiff's estimated FLSA damages are attached hereto as Exhibit 2. As reflected in the attached calculations, in order for Ms. Grijalba to recover that amount, several factual and legal inferences would need to be resolved in her favor, including a finding that as an employee of the Defendants she worked sixty-seven (67) hours per week. Additionally, it would require a factual finding that Defendants acted willfully (and thus that her claims are subject to a three (3) year statute of limitations). In addition, it would require the Court to reject the Defendants' contention that they acted in good faith and award 100% of the unpaid wage amount in liquidated damages.

The proposed settlement provides substantial recovery for Ms. Grijalba and exceeds her unpaid wage claim (full claim, less liquidated damages) under FLSA of $13,030. The amount above Ms. Grijalba's FLSA claims are to resolve her non-FLSA claims, specifically her claims under the NYLL. This amount is well within the range of recovery that represent a reasonable compromise of her claims in this Circuit. See, e.g., *Sicajan Diaz v. Pizza Napolitana, Inc*., No. 19 Civ 4911, 2020 WL 8265766 at *2 (E.D.N.Y. Dec. 4, 2020) (settlement approved where plaintiff received 20.8% of total alleged damages); *Jun Cui v. O2 Korean BBQ*, No. 19 Civ 2794, 2020 WL 7034369 at *4 (E.D.N.Y. Feb. 11, 2020) (noting Plaintiff's net recovery of 61% of the alleged unpaid wages was substantial and fair).

Although not before the Court for approval, it bears noting that the settlement amount fairly resolves Ms. Grijalba's legal claims in addition to those under FLSA considering the

totality of the circumstances. Ms. Grijalba's total claims are approximately $153,805.25, plus reasonable attorney's costs and fees. Approximately $71,754 of the claim is in liquidated damages which, as discussed above, presents significant litigation risk. Further, there is substantial risk that the Plaintiff will not be able to collect on any a judgment award after prolonged defense in this matter. The Defendants no longer operate a laundromat and have closed the business. The business was struggling to survive financially prior to the transfer, mainly because of the Covid-19 pandemic. As a result, the Defendant's ability to pay a judgement awarded in this case is doubtful. The proposed settlement will allow the parties to avoid substantial litigation costs, potentially born by both parties, and thereby reduces the risk that the Plaintiff would be unable to collect on a judgment.

Accordingly, in light of the parties' good faith factual disputes and the attended risk and costs of proceeding with this litigation, the parties believe that a settlement amount of $40,000 is fair and reasonable.

## B.      Burdens and Expenses of Establishing Claims and Defenses, and Seriousness of Litigation Risk

Both parties face considerable risks in proceeding with this litigation. As set forth above, there are factual disputes that could impact the amount Ms. Grijalba is able to recover. While Ms. Grijalba is confident in the strength of her claims and prepared to prove them, Defendants have asserted that any violation of FLSA was not intentional and therefore liquidated damages should not be awarded.

Moving forward with litigation carries significant risk that at the end of a protracted litigation process Ms. Grijalba will not be able to collect on any judgment obtained. The Defendants no longer operate a business, and a protracted litigation process would diminish the assets available to the Defendants to pay any award Ms. Grijalba might receive. The early stage at which a settlement was reached by the parties prevents the expenses required in extended litigation and costs, including extensive attorney time and payment of court-certified interpreters at deposition and trial. As such, the parties have entered into this Settlement Agreement with the shared goal of avoiding the considerable burdens, expenses and inherent risk of continuing with this litigation. The early resolution of this claim is particularly important to Ms. Grijalba, who looks forward to putting the emotional and physical burdens of litigation behind her.

## C.      Arm's Length Bargaining and Possibility of Fraud or Collusion

The terms of the Settlement Agreement were reached after more than a year of arm's-length negotiations between the parties' counsel, concluding shortly after a full-day mediation overseen by a court appointed mediator. Throughout the course of negotiations, the parties contested various factual and legal disputes, including during the June 16, 2021 mediation. Both parties to the Settlement Agreement were represented by counsel experienced in litigating wage and hour matters at all times during negotiations, and there is no evidence of overreaching by Defendants or any evidence of fraud or

collusion. Finally, the Settlement Agreement is fully transparent to the Court, containing no confidentiality provision. Ms. Grijalba has actively participated at every stage of the settlement process and discussed her position extensively with counsel as she considered the terms of the agreement.

**D.    Plaintiff's Attorney's fees are Fair and Reasonable**

The Plaintiff's attorneys are employed by a not-for-profit organization that provides legal services at low or no cost to the client. In this matter, the Plaintiff's attorneys are waiving the fees they may be entitled to under their retainer agreement with the Plaintiff, FLSA and the NYLL.

**E.    The Parties' Negotiated Non-Monetary Provisions are Reasonable.**

In addition to the monetary recovery, the Settlement Agreement contains the following non-monetary terms, all agreed-upon following arms-length negotiations in good faith between the parties.

   1. **Mutual Release**

Paragraph 3(a) in the Settlement Agreement contains a tailored release of claims, whereby Ms. Grijalba agrees to release the Defendants from any claims related to the litigation in this matter. This release is limited and does not purport to release the Parties from all claims or provide a general waiver which might be impermissible under *Cheeks*. See *Seecharan v. Heritage Place LLC*, 20 Civ. 3898, 2021 WL 1299692 at *2 (E.D.N.Y. March 15, 2021)("As discussed by the Cheeks' Court, certain provisions within a settlement agreement are unacceptable when subjected to judicial review. Such provisions include… (2) overbroad releases that waive all claims, especially those with no connection to a plaintiff's wage-and-hour case….)(citations omitted). Cases in this Circuit have routinely accepted limited releases. See *Shamsundar v. FCS Group LLC*, 18 Civ. 2514, 2019 WL 3716198 at *2 (E.D.N.Y. May 22, 2019), *Ocasio v. Big Apple Sanitation, Inc.*, 13 Civ. 04758, 2016 WL 5376241 at *2 (E.D.N.Y. March 16, 2016).

   2. **Affidavit of Confession of Judgment**

The Settlement Agreement provides that the Defendants will provide an Affidavit of Confession of Judgment ("Confession"). See Settlement Agreement, ¶ 2(a). The Confession acknowledges that the Defendants are liable to the Plaintiff and authorizes the entry of judgment in the amount of $40,000, less the amount that has been paid pursuant to the Settlement Agreement, in the event that the Defendants fail to make payments pursuant to the Settlement Agreement. The Confession is made fully transparent and is attached to the Settlement Agreement, attached as Exhibit 1.

The Confession is for the benefit of the Plaintiff. *Cheeks* review is to ensure that terms of the Settlement Agreement are fair to the Plaintiff. See *Mendoza v. LGRC Corp.,* 19 Civ. 8479 , 2020 WL 1974210 at *2, (S.D.N.Y. April 4, 2020) (citing *Vasquez v. La Rola Rest., Inc.,* 17 Civ. 7899, 2019 U.S. Dist. LEXIS 62090, at *4 (S.D.N.Y. Apr. 9, 2019)).

The Confession is for the benefit of the Plaintiff, and "[a]ccordingly, any potential unfairness to the *defendants* inherent in the affidavits of confession of judgment is not a barrier to judicial approval of the Settlement Agreement under *Cheeks* and its progeny." *Mendoza* at *2.

The settlement amount is a reasonable compromise of all Parties' positions, and the proposed attorneys' fees are also fair and reasonable. Accordingly, the Parties respectfully request judicial approval of the parties' proposed Settlement Agreement.

Respectfully Submitted,

*Eric Arbizo*

Eric Arbizo, Esq.
Elissa S. Devins, Esq.
New York Legal Assistance Group
100 Pearl Street, 18th Floor
New York, NY 10004
(P) 212-613-5056
Attorneys for Plaintiff
cc:     All Counsel (via ECF)

# EXHIBIT 1
Settlement Agreement

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made as of the last date in the signature blocks and entered into between plaintiff Flor Grijalba ("Plaintiff ") on the one hand and defendants, Metro Rite Laundromat Inc., ("Metro Rite") and Howard Ji Chen (collectively, the "Defendants") on the other hand (Plaintiff, Metro Rite and Howard Ji Chen are referred to collectively as the "Parties" and individually as a "Party").

## WITNESSETH

**WHEREAS**, on July 28, 2020, Plaintiff filed with the United States District Court for the Eastern District of New York ("EDNY") a complaint under Case Number 1:20-cv-03398 (the "Complaint") alleging certain violations of the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") and applicable regulations;

**WHEREAS**, on December 12, 2020, Defendants filed with the EDNY its Answer to Complaint and affirmative defenses;

**WHEREAS**, Defendants have denied and continue to deny the allegations made against it contained in the Complaint or that it engaged in any wrongful conduct against Plaintiff;

**WHEREAS**, on June 16, 2020, the Parties attended a mediation with Mediator Cyrus Duggar;

**WHEREAS**, the Parties have agreed to resolve this matter solely to avoid the burdens, uncertainty and cost of protracted litigation, and the execution of this Agreement shall not be construed as an admission of liability of any nature by Metro Rite or Howard Ji Chen; and

**WHEREAS**, the Parties acknowledge that *bona fide* disputes and controversies exist between them, both to liability and the amount thereof, if any, and by reason of such disputes and controversies they desire to compromise and have agreed to resolve amicably and settle fully, finally to the extent allowed by law and the Court, all of their past, present, and any future claims, disputes, and any potential disputes that existed or may exist, including but not limited to those relating to the subject matter of the Parties disputes, and those arising out of or related to Plaintiff's allegations, pursuant to the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the above recitals and mutual releases, promises, rights, covenants, and obligations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, having been represented by counsel and intending to be legally bound, and having independently concluded that it is in their respective best interests to do so, agree as follows:

The foregoing "Whereas" clauses are true and corrected and incorporated by reference as part of this Agreement.

**(1)  Settlement Amount**

a)  Defendants, Metro Rite and Howard Ji Chen, agree to pay Plaintiff a total sum of Forty-Thousand dollars ($40,000) (the "Settlement Amount), inclusive of costs and attorneys' fees against Metro Rite and Howard Ji Chen. All Parties shall bear their own costs, attorneys' fees and expenses.

b)  An initial sum of Twenty Thousand Dollars ($20,000) shall be dispatched to the Plaintiff, personally or by certified mail on October 31, 2021, provided this agreement has been approved by the Court, and if not approved by that date, then within 10 days of Court approval.  The money shall be sent by check to Flor Grijalba at 46 Parott Place, Apt. 1, New York, NY 11528, via FedEx, UPS or other air courier, in the form.  The remainder of the Settlement Amount shall be paid with an additional twenty (20) checks each in the amount of One Thousand dollars ($1000), due on the 1st of each month starting in the month following the month when the initial sum of $20,000 is paid.

**(2)  Remedy for Breach.**

a)  Defendant Howard Ji Chen agrees to execute a Confession Judgment, as set forth in the attached Exhibit 1 below, to be held in escrow by Plaintiff's counsel pending full payment of the Settlement Payment. In the event of a breach of this provision, Plaintiff will provide a written notice of said breach, via electronic mail, to be provided to Defendants' counsel at the following email address: moe@lawyerforworkers.com. Upon receipt of said written notice, Defendant will have 15 days to cure the breach.

b)  In the event a Party fails to comply with the terms and conditions of this agreement, the non-breaching Party shall be entitled in addition to any other right or remedy it may have at law or in equity related to breaches of this Agreement, to all reasonable costs associated with enforcing this Article and the Agreement overall, including but not limited to attorneys' fees, if said non-breaching Party prevails in a claim for breach of this Agreement, as determined by a court of competent jurisdiction.

**(3)  Mutual Releases**

a)  Except as to the obligations herein, Plaintiff hereby releases and discharges Defendants Metro Rite and Howard Ji Chen and former employees ("the Releasees") from all claims relating specifically to the litigation that has occurred as of the Effective Date of this Agreement claims including claims under the FLSA and the New York Labor Law, to the extent permitted by law up to the date of the signing of this Agreement.

b)  Notwithstanding anything else set forth herein, nothing herein shall be deemed a waiver of the following: (i) claims for breach of this Agreement; (ii) claims that may arise based upon events occurring after the Effective Date of this Agreement; or (iii) claims that cannot be waived as a matter of law.

2

**(4)** **No Admission of Liability.** Plaintiff acknowledges and agrees that Defendants have entered into this Agreement solely for the purpose of avoiding the burdens and expense of protracted litigation.

**(5)** **Representations and Acknowledgements.** Plaintiff represents and agrees that she: has been advised by the Defendants of her rights to discuss all aspects of this Agreement with an attorney, financial advisor, and/or representative of her choice; has so consulted with an individual/entity of her choice (namely, New York Legal Assistance Group); has carefully read all the provisions of this agreement; has had the opportunity to have the individual/entity she consulted answer any questions she might have had; fully understands all the provisions of this Agreement; has had a reasonable period of time to consider whether to enter into this Agreement; and is voluntarily and knowingly entering into this Agreement.

**(6)** **Entire Agreement**. This Agreement represents the complete and full settlement of all claims between Plaintiff and Defendant Metro Rite and Defendant Howard Ji Chen with respect to Plaintiff's employment with Defendants and the cessation thereof, and fully supersedes all prior agreements or understandings between the Parties pertaining to the subject matter of this Agreement. Plaintiff represents and acknowledges that in executing this Agreement, she does not rely upon any representation or statement made by Defendants regarding the subject matter, basis, or effect of this Agreement other than those contained herein. This Agreement may not be changed in any respect, except by a writing, duly executed by the Parties or authorized representative of the Parties.

**(7)** **Capability to Waive Claims.** Plaintiff is competent to effect a knowing and voluntary release and waiver of all claims contained in this Agreement and to enter into this Agreement. Plaintiff is not the subject of or a party to any activity, proceeding, or action that could impair the right to settle all claims against Defendants or to waive all claims that Plaintiff may have against Defendants.

**(8)** **No Waiver**. Failure to insist on compliance with any term, covenant, or condition contained in this Agreement shall not be deemed a waiver of that term, covenant, or condition, nor shall any waiver or relinquishment of any right or power at any other time be deemed a waiver or relinquishment of any right or power at any other time.

**(9)** **Severability.** The provisions of this Agreement shall be deemed separate and severable. Should any provision or portion of the Agreement be held invalid or unenforceable, the affected provision shall be modified to the extent necessary to make it legal, valid, and enforceable, including Article 3. If it cannot be so modified, it shall be severed from the Agreement, and the remainder of this Agreement shall remain unaffected and continue in full force and effect, which then shall be interpreted to bar any claims Plaintiff may have against Defendants.

**(10)** **Jointly Drafted Agreement.** This Agreement shall be deemed to have been jointly drafted by the Parties, and no provision shall be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

DocuSign Envelope ID: 6A01CF40-2923-4D96-933D-D684B52ACE32

(11) **Applicable Law, Jurisdiction, and Venue**. The interpretation and application of the terms of this Agreement shall be governed by the laws of the State of New York, excluding its conflicts of law provisions that would result in the application of the laws of any jurisdiction other than New York. The Parties submit to and recognize the jurisdiction and proper venue of the United States District Court for the Eastern District of New York over any action or other proceeding arising out of or in connection with this Agreement, and to the extent permitted by applicable law, the Parties waive and agree not to assert, by way of motion, as a defense, or otherwise, that the suit, action, or proceeding is brought in an inconvenient forum, that the venue of the suit, action, or proceeding is improper, or that this Agreement may not be enforced in or by such court.

(12) **No Assignment of Claims.** Plaintiff represents and warrants that she has not assigned or hypothecated any claims herein released in any manner to any person or other entity, in any manner, directly or indirectly. Plaintiff is not aware of any liens and/or pending legal claims applicable to his receipt of the Settlement Amount. Plaintiff also agrees that she will be solely responsible to satisfy any liens or pending legal claims asserted against Plaintiff as against the payment of the Settlement Amount to Plaintiff.

(13) **Counterpart Signatures.** This Agreement may be signed in counterparts, provided that each Party receives a copy fully signed by the other Parties. Electronic signatures such as fax or .pdf files shall be given the same force and weight as if they were original signatures.

(14) **Notice.** Any notice or other communication required or permitted to be given in connection with this Agreement shall be in writing and shall be mailed by e-mail or certified mail, return receipt requested, or by the most nearly comparable method of mailing from or to a location outside the United States, or by Federal Express, Express Mail, or similar overnight delivery or courier service or delivered in person to the Party to whom it is to be given at the address of such Party as set forth in this Section (or to such other address as the Party shall have furnished in writing in accordance with this Section):

Flor Grijalba
c/o New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
Attn: Eric Arbizo
earbizo@nylag.org

Mohammed Gangat
Law Office of Mohammed Gangat
675 Third Avenue, Suite 1810
New York, NY 10017

(15) <u>Effective Date</u>. This Agreement shall become effective as of the date of the Order of the Court approving this Agreement or as of the date the Court So-Orders the Stipulation, whichever is later, without need of any further action by any Party or the Court. The parties further acknowledge that this Agreement is only effective if approved by the Court.

PLAINTIFF ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS AGREEMENT; THAT THIS AGREEMENT HAS BEEN FULLY EXPLAINED TO HER BY COUNSEL, NAMELY NEW YORK LEGAL ASSISTANCE GROUP; THAT SHE FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT OF THIS AGREEMENT; THAT THE ONLY PROMISES MADE TO HER IN EXCHANGE FOR SIGNING THIS AGREEMENT ARE THOSE STATED ABOVE; AND, THAT SHE IS SIGNING THIS AGREEMENT VOLUNTARILY IN ORDER TO FINALLY, COMPLETELY AND CONCLUSIVELY SETTLE ALL MATTERS THAT WERE OR COULD HAVE BEEN RAISED IN THE COMPLAINT. PLAINTIFF AGREES TO WAIVE AND RELEASE ANY CLAIM THAT THIS AGREEMENT WAS PROCURED BY OR THAT SHE WAS INDUCED TO ENTER INTO THIS AGREEMENT BY FRAUD, DURESS, MISUNDERSTANDING, OR COERCION AND FURTHER WAIVE AND RELEASE ANY CLAIM FOR FRAUD IN THE INDUCEMENT OR ANY SIMILAR CLAIM.

(16) IN WITNESS WHEREOF, the Parties hereto have read the foregoing Settlement Agreement and accept and agree to the provisions contained herein and have caused this Agreement to be executed by their respective duly authorized representatives, as of the dates below.

**Flor Grijalba**

By: _[signature]_
Flor Grijalba

Dated: 9/17/21

**Metro Rite Laundromat Inc.,**

By: _[DocuSigned signature: 599543FAE61D464...]_   Dated: 9/17/2021

Name: Howard Chen   Title: Manager

**Howard Ji Chen**

5

By: _____
Howard Ji Chen

Dated: 9/17/2021

6

# EXHIBIT 2
Accounting of Plaintiff's Claims

| Time Period | # of weeks worked | Average hours worked per week | Total hours | Minimum Wage | Overtime rate | Overtime earned (all unpaid) | Spread of Hours Owed (12 NYCRR 142 | Hourly wage actually paid (no | Hourly Wage Owed | Total owed for period | Amount actually paid (total for | Amount still owed for date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 (NYLL) | | | | | | | | | | | | |
| 7/28/2014 - 12/31/2014 | 22 | 67 | 1474 | $8.00 | $12.00 | $2,376.00 | $1,067.00 | $8.00 | $0.00 | $15,235.00 | $11,792.00 | $3,443.00 |
| 2015 (NYLL) | | | | | | | | | | | | |
| 1/1/2015 - 12/31/2015 | 50 | 67 | 3350 | $8.75 | $13.13 | $5,906.25 | $2,425.00 | $8.00 | $2,512.50 | $37,643.75 | $26,800.00 | $10,843.75 |
| 2016 (NYLL) | | | | | | | | | | | | |
| 1/1/2016 - 12/31/2016 | 50 | 67 | 3350 | $9.00 | $13.50 | $6,075.00 | $2,425.00 | $8.00 | $3,350.00 | $38,650.00 | $26,800.00 | $11,850.00 |
| 2017(NYLL) | | | | | | | | | | | | |
| 1/1/2017-07/28/2017 | 30 | 67 | 2010 | $10.50 | $15.75 | $4,252.50 | $1,455.00 | $8.50 | $4,020.00 | $26,812.50 | $17,085.00 | $9,727.50 |
| 2017(FLSA+NYLL) | | | | | | | | | | | | |
| 1/1/2017 - 12/31/2017 | 20 | 67 | 1340 | $10.50 | $15.75 | $2,835.00 | $970.00 | $8.50 | $2,680.00 | $17,875.00 | $11,390.00 | $6,485.00 |
| 2018 (FLSA+NYLL) | | | | | | | | | | | | |
| 1/1/2018 - 12/31/2018 | 50 | 67 | 3350 | $12.00 | $18.00 | $8,100.00 | $2,425.00 | $8.50 | $11,725.00 | $50,725.00 | $28,475.00 | $22,250.00 |
| 2019 (FLSA+NYLL) | | | | | | | | | | | | |
| 1/1/2019 - 03/13/2019 | 11.5 | 67 | 770.5 | $13.50 | $20.25 | $2,095.88 | $557.75 | $9.00 | $3,467.25 | $13,055.38 | $6,934.50 | $6,120.88 |
| Overtime hours total | | | 6304.5 | | | | | | | | **Total wages owed** | **$70,720.13** |

| | |
|---|---|
| Pre-FLSA Total (NYLL) | $35,864.25 |
| 2017-2019 NYLL Total (minimum wage and spread of hours) | $21,825.00 |
| NYLL Total Unpaid Wages | $57,689.25 |
| NYLL UNPAID WAGES TAX ALLOCATION IN SETTLEMENT AGREEMENT(37.5% of the total) | $21,728.00 |
| **2017-2019 FLSA Total (overtime)** | **$13,030.88** |
| | |
| **Other amounts payable under the U.S. Fair Labor Standards Act and New York State law** | |
| Failure to provide pay stubs and wage notices (New York Labor Law §195.1 and 195.3) | $10,000.00 |
| Policy of making unlawful deductions taken for "damaged clothing" (New York Labor Law § 193) | $1,034.00 |
| **Liquidated damages for unpaid wages under FLSA (29 U.S.C. §216)** | **$13,030.88** |
| Liquidated damages for unpaid wages (New York Labor Law § 198 and § 652) | $58,723.25 |
| Attorney's Fees | $0.00 |
| | |
| **Total Claim under FLSA** | **26,061.75** |
| Total Claims | $153,508.25 |